## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

IN RE:                                                    **Chapter 7**

**KEELEY AND GRABANSKI**                      **Bankruptcy No. 10-31482**
**LAND PARTNERSHIP,**

                                  **DEBTOR.**
_____/

## MEMORANDUM AND ORDER ON APPLICATION
## FOR APPROVAL OF EMPLOYMENT OF ATTORNEY

Debtor filed an Application for Approval of Employment of Attorney

seeking approval of DeWayne Johnston, Johnston Law Office, as Debtor's

attorney.   The United States Trustee, Choice Financial Group, John and Dawn

Keeley, and Kip M. Kaler, the Chapter 7 trustee objected to the application.

Because of the numerous conflicts of interest that exist and the additional conflicts

that would result, the Court denies the Application for Approval of Employment.

## I.   FACTUAL BACKGROUND[1]

John and Dawn Keeley and Thomas and Mari Grabanski formed Debtor

Keeley and Grabanski Land Partnership (KGLP) in 2007.   On December 6, 2010,

the Keeleys and other creditors filed an involuntary Chapter 11 case against Debtor

KGLP.   The Court entered an Order for Relief on January 7, 2011.

---

[1] Additional background facts relevant to the context of this case have been
thoroughly discussed in other orders in this case, ECF Doc. No. 117 (Memorandum
and Order filed October 11, 2011) and another related case, Thomas and Mari
Grabanski, Order Dismissing Case, ECF Doc. No. 572.   Those facts are
incorporated by reference.

After the Court entered the Order for Relief, Attorney DeWayne Johnston filed a Motion to Dismiss on behalf of Debtor (KGLP).   Johnston signed the Motion as "Attorney for Thomas Grabanski, Mari Grabanski, and Grabanski Grain, LLC"—none of which is the Debtor here.   Johnston had applied and was approved for employment as attorney in both the Thomas and Mari Grabanski bankruptcy and the Grabanski Grain, LLC, bankruptcy.   Thomas and Mari also owned all shares of Debtor, KGLP.   The Motion to Dismiss was eventually denied.

On April 5, 2011, the Court approved creditors' request to appoint a Chapter 11 operating trustee.   The Court appointed Kip M. Kaler.   The Court concluded that unreasonable delay had occurred in Debtor's case and that an operating trustee would help move the case forward.

Debtor, through Thomas Grabanski's urging, fought the appointment of the Chapter 11 Trustee.   Attorney Johnston continued to make filings on Debtor's behalf even though he had not applied for employment.   He filed the appeal of the Order Approving a Chapter 11 Trustee to the Eighth Circuit Bankruptcy Appellate Panel (B.A.P.).   The B.A.P. affirmed the appointment of a Chapter 11 Trustee.

After the Chapter 11 Trustee operated Debtor for a short period of time, he filed a Motion to Convert the case to a Chapter 7.   Attorney Johnston filed a

2

resistance and signed it as "Attorney for Debtor."   Johnston also filed a Chapter 11 plan and appeared on behalf of Debtor at the hearing.[2]   On October 11, 2011, the Court entered an order converting Debtor's case from Chapter 11 to Chapter 7.

After conversion, Kaler was appointed as the Chapter 7 Trustee.   He moved to employ himself under § 327(a) as attorney for the estate.   Johnston again filed an objection on behalf of Debtor.   The Court ultimately approved Kaler as attorney for Trustee.   By this time, Kaler as Trustee had already filed an adversary against Louis Slominski, Jr. to set aside the lease Slominski claimed to have on Debtor's land in Texas.   Louis Slominski, Jr. is one of Thomas Grabanski's best friends and lived very near to Grabanski in North Dakota. Trustee also filed an adversary against Thomas and Mari Grabanski in a dispute over KGLP's ownership of some property.   The Trustee later added Thomas Grabanski's parents, Merlyn and Dolores Grabanski, and G&K Farms as defendants.   Attorney Johnston agreed to represent all of the defendants in these adversaries brought by Debtor's estate.

---

[2]   Any reference to the Court before September 20, 2011, relates to proceedings overseen by the Honorable William A. Hill.   The undersigned took over this and other related cases upon Judge Hill's retirement.   The undersigned's first contact with these cases was in presiding at the hearing on the Motion to Convert.

Almost one year after the involuntary filing, the United States Trustee's Office filed a Motion to Compel Attorney (Johnston) to File Disclosure of Compensation, Paid or Promised.   On December 21, 2011, more than one year after the case was filed, Thomas Grabanski, as partner in Debtor, KGLP, filed an Application for Approval of Employment of DeWayne Johnston as attorney for Debtor.   The application asserts that Attorney Johnston has functioned as Debtor's attorney since the involuntary case was filed in December 2010.   The application sought retroactive approval of employment for Mr. Johnston back to that time.   In support of the applications, Attorney Johnston asserted his qualification by reason of practice and experience to represent Debtor.   He also specifically stated that he had disclosed to Debtor that he had "no connections with the debtor, creditors, or any party in interest, their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee, save for this application to represent the debtor."[3]

Attorney Johnston—at that time—already represented Thomas and Mari Grabanski in their individual bankruptcy (No. 10-30902).   The Grabanskis filed their bankruptcy case on July 22, 2010.   The Court approved Attorney Johnston's employment as the Grabanskis' attorney on August 30, 2010.   Thomas and Mari

---

[3] See Appl. for Approval of Employment of Att'y ¶ 4.

4

Grabanski have admitted they were the sole partners of Debtor, KGLP, at all times relevant to this issue.[4]   Attorney Johnston also had already appeared on behalf of Louis Slominski, Jr., a defendant in the adversary proceeding (No. 11-7021) that Trustee Kaler brought on behalf of Debtor's estate to set aside as a fraudulent transfer the alleged lease of Debtor's property to Slominski.   Attorney Johnston filed an Answer for Slominski—on October 6, 2011—more than two months before his application for employment in this case.

Attorney Johnston also had already appeared and answered for Thomas and Mari Grabanski in the adversary the Trustee brought on behalf of Debtor's estate against them, Adv. No. 11-07022.   Johnston filed the Answer for them on September 29, 2011—almost three months before his application for employment in this case.   Trustee later amended that Complaint to add Merlyn and Dolores Grabanski, and G&K Farms as Defendants.   On January 9, 2012, less than three weeks after applying to be appointed Debtor's counsel and before the Court heard the matter on January 25, 2012, Attorney Johnston appeared and answered on behalf of Merlyn and Dolores Grabanski and G&K Farms as defendants to litigation brought by the estate.

---

[4] See Reply to Objections to Appl. for Approval of Employment of Att'y ¶ 2.

5

The United States Trustee's Office, Trustee Kaler, Choice Financial Group and John and Dawn Keeley object to the application for Johnston's employment. The central basis for their objections is that Attorney Johnston had and has several conflicts of interest because he already represented the Grabanskis in their individual bankruptcy and several other parties directly adverse to Debtor in adversary proceedings.   The objecting parties argued that Johnston's representation of the Grabanskis individually prevented him from representing Debtor because the interests of Debtor's estate were adverse to the Grabanskis in numerous ways from the beginning.   They pointed out the Court's appointment of a Chapter 11 operating trustee for Debtor, the conversion of the case to Chapter 7, the Grabanskis' efforts to impede Trustee by proposing a plan in their individual case that relied upon land owned by Debtor (KGLP), and the Grabanskis' attempts to claim assets as their own which in fact belong to Debtor.   The objecting parties also pointed out Attorney Johnston's representation of the Grabanskis, Slominski, Grabanskis' parents, and several other adversary defendants in claims brought by the estate of this Debtor (KGLP).

The Court held hearing on this matter on January 25, 2012, with numerous other matters in this case and the Grabanskis' personal bankruptcy case.   The Court and other parties raised these apparent conflicts.   Attorney Johnston assured

6

the Court that once all of the relationships were explained and all the information had come in, the Court would see there were no real conflicts of interest.   He argued that the allegations of conflict were part of the continuing aggressive creditor strategy to deprive his clients of their chance to be heard.   The Court took the matter under advisement.   The Court left the matter open for further briefing, which the U.S. Trustee provided on February 7, 2012.

Johnston has continued to periodically appear in this case after he made his application.   His appearances and filings, however, have been divided between those on behalf of adversary defendants Slominski, Merlyn and Dolores Grabanski, G&K Farms, and those on behalf of Debtor (which were really mostly assertions of the interests of Tom and Mari Grabanski).

As noted in the Background Facts in the order dismissing the Grabanskis' bankruptcy with prejudice—numerous issues came up after this hearing that the Court thought might lead to a global resolution of these matters.   Unfortunately, that did not come to pass.

## II.   CONCLUSIONS OF LAW

A trustee, or a Chapter 11 debtor-in-possession acting in lieu of a trustee under 11 U.S.C. § 1107, may employ professional persons, including attorneys, to assist in carrying out his or her duties.   11 U.S.C. §§ 327(a), 1107.   To be

7

employed, professional persons may not "hold or represent an interest adverse to the estate" and must be "disinterested persons."    11 U.S.C. § 327(a).

### A.    Johnston is not a Disinterested Person and Holds Interest Adverse to the Estate

A "'disinterested person' means a person that–

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."

11 U.S.C. § 101(14).    "[A]n individual's interest is considered adverse to the estate if that interest would tend to lessen the value of the bankruptcy estate or foster a predisposition against the estate."    Blumenthal v. Myers (In re M&M Mktg., L.L.C.), 426 B.R. 796, 804 (B.A.P. 8th Cir. 2010); see also In re Project Orange Assocs., LLC, 431 B.R. 363, 370 (Bankr. S.D.N.Y. 2010) ("Generally stated, the adverse interest test is objective and excludes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.").    The Court has the discretion to find a potential conflict of interest.    In re Carlson, Bankr. No. 04-41534, 2012 WL 3133816, at *1 (Bankr. D. Neb. Aug. 1, 2012) (citing In re

8

Premier Farms, L.C., 305 B.R. 717, 720 (Bankr. N.D. Iowa 2003)).    A potential

conflict may even be enough to disqualify counsel.    Id.    An attorney who is

disqualified by an actual conflict of interest remains disqualified as long as the

conflict exists.    Needler v. Rendlen (In re Big Mac Marine, Inc.), 326 B.R. 150,

155 (B.A.P. 8th Cir. 2005).

It is important to reiterate here that a Chapter 11 Trustee was appointed in

this case before the Debtor-in-Possession made any application to employ an

attorney.    The Chapter 11 Trustee employed himself to represent the estate, and

did the same when he remained as Chapter 7 Trustee after the case was converted.

Trustee has never asked to employ Mr. Johnston and has consistently opposed Mr.

Johnston's appointment.[5]

The burden of proof is on the applicant to establish that he or she is both

disinterested and does not represent an interest adverse to the estate.    In re Big

Mac Marine, Inc., 326 B.R. at 154; see also Interwest Bus. Equip., Inc. v. United

States Trustee (In re Interwest Bus. Equip., Inc.), 23 F.3d 311, 318 (10th Cir.

---

[5] While appointment of an operating trustee does not bar recovery by debtor's
own counsel, that additional counsel may receive compensation "only if his or her
services provided an 'identifiable, tangible, and material benefit to the estate.'"    In
re Melp., Ltd., 179 B.R. 636, 640 (E.D. Miss. 1995); see also In re Athens/Alpha
Gas Corp., Bankruptcy No. 03-30008, 2005 WL 5310746 (Bankr. D. N.D. Dec. 5,
2005) (citing Melp).    While full analysis of this issue is not necessary because the
conflicts prevent the employment altogether, the Court would also find debtor's
separate counsel (Johnston) provided no such benefit to the estate.

1994); In re Huntco Inc., 288 B.R. 229, 232 (Bankr. E.D. Mo. 2002).    Applicant

entirely fails to satisfy that burden.

Attorney Johnston's representation of the Grabanskis, the principals of

Debtor, in their individual case creates the first conflict of interest.   See In re Big

Mac Marine, Inc., 326 B.R. at 150 (holding that an attorney who represents a

debtor's principals in their individual bankruptcy was disqualified, based on an

actual conflict of interest, from representing the debtor); see also In re Wiley

Brown & Assocs., LLC, Bankr. No. 06-50886, 2006 WL 2390290, at *4 (Bankr.

M.D. N.C. Aug. 14, 2006) ("It is a conflict of interest to represent a debtor and an

owner of the debtor."); In re TMA Assocs., Ltd., 129 B.R. 643, 647 (Bankr. D.

Colo. 1991) ("An attorney is at peril when simultaneously representing a

partnership and its general partner.").

As soon as the two separate bankruptcy estates at issue were created, their

interests diverged.   See Winterhalter, P.C. v. United States Trustee (In re The

Harris Agency, LLC), 462 B.R. 514, 523 (E.D. Pa. 2011) ("Although the interests

of the principals of Union One and Harris certainly may have aligned, i.e. in their

desire to sacrifice Harris to ensure the survival of Union One, once Harris became

a debtor in possession it no longer had the same interests as its Principals.").   The

divergence is caused because a debtor-in-possession owes "'the same fiduciary

10

obligation to creditors and shareholders as would the trustee for a debtor out of possession.'"    Id. at 523-24 (quoting Commodity Futures Comm'n v. Weintraub, 471 U.S. 343, 355 (1985)).    "[A]mong the fiduciary obligations of a debtor-in-possession is the duty to protect and conserve the property in its possession for the benefit of creditors."    In re The Harris Agency, LLC, 462 B.R. at 524.    If Attorney Johnston was allowed to represent both the Grabanskis and Debtor (KGLP) bankruptcy estate, he would be representing parties with plainly adverse positions and would be forced to abandon his fiduciary obligation to one or the other or both.    See In re Bonneville Pac. Corp., 196 B.R. 868, 886 (Bankr. D. Utah 1996) ("When counsel for a debtor in possession undertakes representation of a principal of the debtor, [he] abandons his fiduciary obligations as counsel for the Debtor corporation.").

The conflicting and competing interests between the Grabanskis and Debtor have only grown and become more apparent as the case progressed.    Initially, Debtor's bankruptcy estate included two parcels of real property in Texas, the Lenth Parcel and the Unruh Parcel.    Trustee Kaler was appointed Chapter 11 Trustee on April 5, 2011, because there had been an unreasonable delay in reorganizing Debtor's estate, which focused on the future of the parcels.    The Trustee moved to convert the case from Chapter 11 to Chapter 7 in July, 2011.

11

Attorney Johnston, purportedly on behalf of "Debtors"—but really on behalf of the Grabanskis—opposed the Trustee's Motion.

Most of Debtor's (KGLP) creditors had long expressed a desire to sell the Lenth and Unruh Parcels outright.   The Grabanskis actively opposed any sale of the parcels and, at a minimum, wanted to condition any sale on the Grabanskis' unqualified right to lease and then buy back the parcels from a purchaser.   The sale and lease-back of these two parcels became the center-piece of a Chapter 11 plan filed by Attorney Johnston, purported to be filed on behalf of Debtor, on September 7, 2011.   This "plan" came long after the Trustee had assumed control of Debtor and more than a month after Trustee moved to convert the case to Chapter 7.   In fact, it was filed on the eve of the hearing on conversion.   The plan proposed to sell these parcels at a reduced price in order to pay some creditors (not others) and then the parcels would be leased back to the Grabanskis with an exclusive five-year irrevocable option to repurchase the land.

The Court rejected "Debtor's plan" filed by Attorney Johnston and his claims Debtor could in fact reorganize.   The Court converted the case from Chapter 11 to Chapter 7 on October 11, 2011.   Despite the Order converting the case to a Chapter 7—a liquidation—Attorney Johnston continued to assert throughout the remainder of the case that Debtor should be reorganized not

12

liquidated.    The basis for Attorney Johnston's continuing assertion about the need

for reorganization of Debtor (KGLP) derived not from interests of the estate and its

creditors to maximize the amount received, but instead derived from the interests

of the Grabanskis (whom Johnston represented) in their own case to continue to

farm the land in Texas.    The Grabanskis' desire to retain an interest in the Texas

land Debtor (KGLP) owned was evident in their proposed plan of reorganization in

their own case, Thomas and Mari Grabanski, Bankr. No. 10-30903.    (See ECF

Bankr. No. 10-30903, Doc. #387 and #388).    The plan in their own Chapter 11

case proposed that the Grabanskis would fund their plan by farming KGLP's real

estate parcels and using KGLP's additional assets.

       After the Court converted Debtor's (KGLP) case, however, liquidation was

the goal.    See Contractors, Laborers, Teamsters and Eng'rs Health and Wealth

Plan v. Killips (In re M & S Grading, Inc.), 526 F.3d 363, 367 (8th Cir. 2008)

(citations omitted) (finding that "the aim of a Chapter 7 liquidation is the prompt

closure and distribution of the debtor's estate"; "the Chapter 7 trustee is entrusted

with 'collect[ing] and reduc[ing] to money the property of the estate for which such

trustee serves, and clos[ing] such estate as expeditiously as is compatible with the

best interests of parties in interest'"); see also Sosebee v. Steadfast Ins. Co., 701

F.3d 1012, 1022 (5th Cir. 2012) (citing Pioneer Inv. Servs. Co. v. Brunswick

Assocs. Ltd., 507 U.S. 380, 389 (1993) (finding that the goal of a Chapter 7

bankruptcy is liquidation of the debtor's assets)).    Attorney Johnston's continued

attempt to reorganize Debtor (KGLP), was thwarting, not supporting the interest of

Debtor's bankruptcy estate.    Johnston's efforts were undoubtedly for the

Grabanskis' benefit, not the Debtor or its creditors.    This is the case in virtually

every appearance he purportedly made on behalf of Debtor (KGLP).    Attorney

Johnston appeared and participated only to represent the Grabanskis' interests or

the interest of his other clients—Merlyn and Dolores Grabanski, Louis Slominski,

Jr., and G&K Farms.    In simplest terms, Johnston's representation of Debtor did

not pose a potential conflict of interest—it posed several actual and

readily/identifiable direct conflicts.

Additionally, Attorney Johnston made statements during hearings

demonstrating a confusion about which assets are held by each bankruptcy estate.

In particular, during the Court's March 30, 2012 hearing in the Grabanskis'

individual case, Johnston indicated that creditors were trying to take the two Texas

parcels from the Grabanskis and noted those pacels were a portion of the

Grabanskis' possessions.[6]    By making these statements, Attorney Johnston failed

---

[6] On March 7, 2012, approximately three weeks before the March 30, 2012,
hearing, the Court ordered that Trustee Kaler could set aside the lease to Slominski
as a fraudulent transfer and that Trustee Kaler was entitled to recover possession of

14

to recognize the Grabanskis never owned the parcels.    Debtor (KGLP) owned the parcels, they were a part of its estate, and the estate had been converted to a Chapter 7.    Attorney Johnston has failed, throughout the cases, to recognize the separate interests of Debtor (KGLP) and the Grabanskis.    As a result, creditors, especially those of Debtor, are at risk if one law firm represents both estates.    In re Wiley Brown & Assocs., LLC, 2006 WL 2390290, at *4-5 ("An attorney cannot simultaneously represent a debtor and a creditor of the estate.").

Attorney Johnston not only took positions against the KGLP bankruptcy estate by advocating for the Grabanskis, he actually has made appearances on behalf of some creditors of Debtor (KGLP) by filing proofs of claims on behalf of Louis Slominski, Jr., G&K Farms and Merlyn and Dolores Grabanski. [7]   He went even further by representing all of those same clients and litigating **against** Debtor's estate in adversary claims brought by the Trustee.    Johnston represented Slominski in a lawsuit brought by the Trustee on behalf of Debtor's estate to avoid the lease on one of Debtor's parcels of real estate as a fraudulent transfer. Johnston represented Thomas and Mari Grabanski, Merlyn and Dolores Grabanski, and G&K Farms in a second adversary by Trustee on behalf of the estate over a

---

the Unruh Parcel immediately.
    [7]  Although Slominski's proof of claim has been withdrawn, it was initially filed by Attorney Johnston.

dispute about ownership of some personal property and equipment on KGLP land.

It is difficult for this Court to imagine how Johnston could have been in more

direct and actual conflict with the KGLP estate.   It is black letter law that an

attorney holds interests adverse to an estate if he or she also serves as counsel for

creditors of the debtor.   Blumenthal v. Myers (In re M&M Marketing, L.L.C.),

397 Fed.Appx. 258, 259 (8th Cir. 2010).

   Attorney Johnston also has entirely failed his duty to disclose these actual or

potential conflicts of interest in his application, which is the proper place to do so.

See In re Kappy Invs., Inc., 465 B.R. 839, 842 (Bankr. D. Minn. 2012) (finding

that proper disclosure of potential conflicts of interest is made in the application for

employment filed of record so the potential conflicts are seen by the court and all

interested parties in the case).   When the involuntary petition against Debtor

(KGLP) was filed, Attorney Johnston's employment as the debtors' attorney in the

Grabanskis' individual case had been approved for approximately three months.

By the time the application for Johnston's employment for Debtor (KGLP) was

filed, Attorney Johnston had been employed in the Grabanskis' individual case for

over a year.   He was or should have been well aware that potential conflicts of

interest existed and he did not disclose them.   Instead, he included in his

application a direct statement to the contrary, that he had "no connections with the

16

debtor, creditors, or any party in interest, their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee, save for this application to represent the debtor (KGLP)."[8]

The Court has overseen a large part of this case, the adversaries, and the Grabanskis' related bankruptcy cases.    Attorney Johnston's representation of multiple parties has been discussed with him several times.    Each time, he has assured the Court that he not only has investigated the matters fully, but that once the Court sees all the evidence in the different cases, and understands the relationships of the different entities, the Court would also see no conflict and that this was just the creditors' joint strategy to aggressively go after whatever he tried to do.

The Court should note it is not only the duty of the applicant to bring potential conflicts of interest to the Court's attention (which he failed to do), but also to show why certain issues are not really conflicts (which he also failed to do). See id. ("When applying to serve as counsel to the debtor, it is the responsibility of the debtor and his counsel to fully disclose all relationships with the debtor, related entities, creditors and any other parties in interest."); see also In re Diamond Mortg. Corp. of Ill., 135 B.R. 78, 97 (Bankr. N.D. Ill 1990) (holding that "any fact which

---

[8] See Appl. for Approval of Employment of Att'y ¶ 4.

17

would be relevant to the court's determination of whether the professional has a

conflict of interest, is not disinterested or represents an adverse interest, must be

disclosed" and noting that a reviewing court has no duty to search a file to find

conflicts of interest).

Based on the foregoing, Attorney Johnston has entirely failed to sustain his

burden of proof as an applicant.    He has basically made no showing, other than

blanket assertions that he does not see any conflict issues.[9]    He failed entirely to

make this showing.    In fact, the more evidence that came in, the conflicts became

well established.

Grabanski asserted in his December 2011 application that the Court and all

interested parties have acted in a manner consistent with the belief that Attorney

Johnston was the proper attorney for Debtor.[10]    This is not a correct statement and

misses the point.    This assertion is incorrect because the other parties and the

Court have repeatedly brought these conflict issues up throughout this and the

other cases.    The other parties, in particular the Trustee, Kip Kaler, has repeatedly

pointed out the conflicts and lack of approval of the appointment of Johnston to be

an attorney for Debtor (KGLP).    Mr. Johnston has been largely dismissive of the

---

[9]  Attorney Johnston argued to the Court during the January 25, 2012,
hearing that he did not see any conflict of interest issues with his representation.

[10]  See Reply to Objections to Appl. for Approval of Employment of Att'y
¶ 9.

18

comments and routinely brushed them off as hyperbole from an overly aggressive

Trustee—or piling on as a strategy by the creditors as a group.

The reference to "the Court" acting in a manner consistent with Johnston

properly acting for Debtor is also misleading.   The undersigned took over this

case on September 2, 2011 and the Grabanski related bankruptcies on September

15, 2011.   The first hearing the undersigned held was in this case on September

23, 2011.   That hearing addressed only whether the case should be converted

from Chapter 11 to Chapter 7.   The undersigned did not investigate whether Mr.

Johnston had properly moved at the beginning of the case—nearly ten months

earlier—to be appointed or approved to represent Debtor (KGLP).   This issue

simply never came up at that time for adjudication.

At that point in time, the record was clear that Johnston had been approved

to represent the Grabanskis in the personal Chapter 11, and in the Grabanski Grain,

LLC bankruptcy.   However, the KGLP case—this case—was in flux.   The

B.A.P. had just affirmed an earlier decision to appoint a Chapter 11 Trustee, and

that the Chapter 11 Trustee was now seeking to convert the case to a Chapter 7.

While Johnston appeared at the hearing and entered an appearance for "Debtor", he

was actively and overtly representing the interest of the Grabanskis.   Johnston's

19

next filing in this case—KGLP—came specifically on behalf of Tom and Mari

Grabanski in a Motion for Protective Order on October 6, 2011.

On December 2, 2011, the United States Trustee's Office moved to compel

Attorney Johnston, in all three cases—Thomas and Mari Grabanski, Grabanski

Grain, LLC, and this case KGLP—to disclose the source of his compensation.

The United States Trustee's Motion in the Grabanskis' individual case was

captioned with each of the individual names and then several a/k/a names

including G&K Farms, Grabanski Grain, LLC, and MTM Farms.    Attorney

Johnston responded with a document filed in all three cases with all three captions

(with no a/k/a names), requesting more time.    He eventually filed the required

disclosure of compensation in all three cases.    In Grabanskis' individual case, and

Grabanski Grain, Attorney Johnston indicated payments to date came from G&K

Farms.    In all three cases, he noted future payments would be made from a

retainer amount (not disclosed) in his law firm account.    He also made the motion

pending here for approval of his employment in this case, KGLP.

The issue of Johnston's employment by Debtor—KGLP came to the Court's

attention for the first time at the hearing on January 25, 2012.    The application

itself, filed a month earlier, noting that the Court had always known and acted as if

Johnston was properly the attorney—was simply incorrect.    As stated above,

20

when the Court was confronted with this information at the January 2012 hearing, Mr. Johnston assured the Court there were no conflicts.   He, several times throughout the case, stated that once the Court understood all the inter-relationship between the numerous entities and parties involved, the Court would see that the conflicts were non-existent.   He has also stated several times that the conflicts were simply alleged as a distraction by the other side.

The Court notes that several times in these cases it has warned Mr. Johnston of the possible harsh consequences he and his clients may face if he was not correct in his characterization of these relationships that appeared to be adverse to each other.   One of those harsh consequences is coming to pass here.   The Court finds that Attorney Johnston has entirely failed to demonstrate there is no conflict of interest in his representation of Debtor.   The Court finds the conflicts have become more clear—not less clear—as additional information has been received. The Court is thus left with no alternative but to deny Attorney Johnston's application for employment in this case.

Mr. Johnston may have assumed that because he was employed in both the individual Grabanski case and the Grabanski Grain, LLC case that his employment was going to be allowed in the case of another Grabanski related entity.   Those cases, however, did not present the same type and number of conflicts that are

21

obvious in this case.    Moreover, the rules are clear that each case requires a

separate application and analysis of the facts to avoid this very problem of

assuming there is no conflict.    As noted at length above, the conflicts are clear

and easily identified here.    Mr. Johnston took the chance that he could show in the

numerous proceedings following his application that these apparent conflicts did

not exist.    He has been entirely unable to make that showing.    Frankly, at some

point, the Court hoped he would reach that obvious conclusion and withdraw the

application for employment in this case himself.    He did not do so.

## B.    Johnston's Request for Appointment Nunc Pro Tunc to Time Before Case Converted is also Without Merit

Debtor has suggested that he could be employed on a nunc pro tunc basis for

at least the early work he did in the case.    The limited availability of nunc pro

tunc approval of employment is best understood in context of the long-established

rules in the District of North Dakota:

> It is axiomatic bankruptcy law that in order to be compensated under 11 U.S.C. § 330(a), a professional employed by a debtor in possession must as a prefatory measure have been employed under § 327 or § 1103 in order to receive compensation.
> . . .
> As specifically set forth in § 330(a), only those professionals "who have been employed under section 327 or 1103" are entitled to be compensated from estate assets. 11 U.S.C. § 330(a). Therefore, when reading § 327(a) in conjunction with § 330(a) and Bankruptcy Rules 2014 and 2016, it becomes quite apparent that a professional may not

be compensated with estate assets unless and until properly employed in accordance with the mandates of the Code and Rules.

. . .

It naturally follows therefrom that a professional will only be compensated for those services rendered and expenses incurred after the entry of an appropriate order approving the employment in the first instance.

. . .

Courts have uniformly adhered to a per se rule that a professional that has not obtained court approval in the first instance is not entitled to compensation for work done prior to the filing of the application of employment. See, e.g., J.L. Lavender v. Wood Law Firm, 785 F.2d 247, 248 (8th Cir.1986) (holding that applications for fees of professionals who fail to obtain "prior" court approval should generally be denied, with the funds received returned to the bankruptcy estate);

. . .

> When there is no compliance with the Code or rules, there is no right to compensation. The services for which compensation is required must have been performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering services may be an officious intermeddler or a gratuitous volunteer. The purpose of the rule requiring prior court authorization of employment is to provide the court with a means of control over administrative expenses. Thus an attorney [or other professional] who acts for a trustee or on behalf of a trustee without approval by the court may be denied compensation even though valuable services were rendered in good faith.

. . .

2 Collier on Bankruptcy ¶ 327.02, at 327–9–10 (15th ed.1993) (footnotes omitted). The rule is often steadfastly applied even in circumstances in which the services rendered may have been of benefit to the estate.

. . .

23

While frequently producing a harsh result, the rule is an absolute and basic condition that is necessary in order to ensure a judicial review and control over disbursements from the bankruptcy estate. The rule further operates to preserve the funds available for distribution under a plan of reorganization. Id. Moreover, the need for a strict adherence to the requirement of prior court approval is quite understandable given the priority status afforded claims for professional compensation by § 503(b) and § 507(a)(1) of the Code.

. . .

The pre-approval requirement is, however, subject to a narrow exception so that employment, reimbursement of expenses, and compensation for services rendered may be approved by a retroactive court order. In "limited circumstances", a bankruptcy court may in its discretion exercise its equitable powers and enter a nunc pro tunc order authorizing the employment and compensation of professionals. There is, however, no right to a nunc pro tunc order.  To the contrary, only where there has been a proper showing that "exceptional" or "extraordinary" circumstances existed such that the denial of fees would be unfair and result in inequitable consequences, will this court obviate the need to obtain the requisite pre-approval. As a general proposition, this court aligns itself with the majority of courts that have addressed the matter which have held that mere neglect, oversight, or inadvertence generally will not suffice. To hold otherwise, would essentially encourage a general nonobservance of the requirement of pre-employment approval as the framers of the Code clearly contemplated.

In re Mumm, Bankr. No. 92-30001, 1994 WL 1887496, at *4 (Bankr. D. N.D.

March 4, 1994) (citations omitted).   The "exceptional circumstances" test has

been recited in its most succinct form as follows:

*Nunc pro tunc* approval should only be granted in narrow situations and requires that (i) if the application had been timely, the Court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances.

24

In re Keren Ltd. P'ship., 189 F.3d 86, 87 (2d Cir. 1999) (citing In re Jarvis, 53 F.3d

416, 420–21 (1st Cir. 1995)).   This is consistent with the Eighth Circuit's rules in

In re Lavender, 785 F.2d 247, 248 (8th Cir. 1996) (holding that applications for

fees of professionals who fail to obtain "prior" court approval should generally be

denied, with the funds received returned to the bankruptcy estate).

The Court will not consider the application on a nunc pro tunc basis even for

the limited period of time where he was fighting the appointment of a Trustee for

KGLP.   It is clear to the Court that the potential conflicts were as apparent when

the case began as the actual conflicts are now.   The Court finds that virtually

every filing, appearance, and argument Johnston purported to make for KGLP was

actually advocacy for the Grabanskis individually—and not the bankruptcy estate

of Debtor.   The Grabanskis certainly have a right to be represented and heard in

this case—but just as certainly have no right to have their adverse interests

represented by an attorney employed by the estate/trustee and paid for by the

creditors in this limited-asset case.

In sum, Attorney Johnston has entirely failed to demonstrate that he is

disinterested and that he does not represent an interest adverse to the estate.   To

the contrary, his actions on behalf of the Grabanskis and a number of Debtor's

creditors demonstrate that he is not disinterested and represents interests adverse to Debtor's estate.

The Court therefore concludes that Attorney Johnston is disqualified from employment as Debtor's attorney.   Debtor's Application for Approval of Employment of Attorney is denied.

The Court has considered all other arguments and deems them to be without merit.

**SO ORDERED.**

Dated this 30th day of May, 2013.

**THAD COLLINS, JUDGE**
**U.S. BANKRUPTCY COURT**
**SITTING BY DESIGNATION**