## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| KEELEY AND GRABANSKI LAND | ) | |
| PARTERNSHIP, | ) | |
| | ) | Bankruptcy No. 10-31482 |
| Debtor. | ) | |

## ORDER AND MEMORANDUM RE INTERIM APPLICATION FOR COMPENSATION FOR G. DONALD HASLAM

This matter came before the Court for an evidentiary hearing in Fargo, North Dakota.[1]  Donald Haslam, attorney for the Trustee, appeared.  Patrick Sinner appeared with and for Chapter 7 Trustee Kip Kaler ("Trustee").  The Court took the matter under advisement, giving the parties one week to file briefs if they wished.  Neither party filed a brief.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## SUMMARY OF THE CASE

Haslam is an attorney for Trustee.  Trustee hired Haslam to bring a cause of action to trial in Texas state court.  Haslam brought the action to trial and procured a judgment.  He filed an interim application for compensation in this Court, seeking $17,275.00 in fees and $144.00 in costs and asking that they be paid as a cost of administration in this bankruptcy case.

---

[1] This matter was heard by The Honorable Thad J. Collins, Chief United States Bankruptcy Judge for the Northern District of Iowa, sitting by designation.

Trustee objects to and seeks a reduction of Haslam's fees.  Trustee argues that the fees should be reduced because they: are out of proportion with the $25,000 recoverable for the estate; are for work that was unnecessary or unauthorized; include billing for clerical work; include billing for services rendered before the Court approved Haslam's employment; include billing for time that was not included in an interim accounting; and contain excessive minimum charges.  Trustee asserts that a fee award of $7,500 is proper.

The Court finds that Haslam's bill is for necessary, authorized, and reasonable work.  The Court does, however, reduce the bill for work performed before the Court approved his employment, for time that was not included in the interim accounting, and for clerical work.  The Court awards $12,150 in fees and $144 in costs.  The reasoning for this award follows.

## FINDINGS OF FACT

Around December 1, 2010, Debtor Keeley and Grabanski Land Partnership ("Debtor") entered into a lease agreement with Louie Slominski ("the Lease").  Slominski leased two tracks of farmland, including the three houses on those tracks, from Debtor.

About a week later, an involuntary Chapter 11 Bankruptcy petition was filed against Debtor.  The case was later converted to Chapter 7.

2

On October 26, 2011, Chapter 7 Trustee brought an adversary proceeding to avoid the Lease.  The Court found that the Lease was a fraudulent transfer and that the estate was entitled to possession of the leased property.  The Court gave Slominski 30 days to vacate the subject property.  When Trustee took possession, he found that the three houses on the property had been severely damaged.

Trustee sued Slominski for the damage to the houses.  After obtaining approval from this Court on April 22, 2014, Trustee hired Haslam as local counsel in the Texas lawsuit.  This dispute is about Haslam's fees in that lawsuit.

From the beginning, Trustee made it clear to Haslam that Trustee did not want to spend a lot of money prosecuting the lawsuit.  Trustee told Haslam that the case was simple, that Trustee would provide the documents and witnesses for trial, and that Haslam would not need to spend much time on the case.  Trustee knew that any judgment against Slominski over $25,000 was probably uncollectable.  The only reason a judgment would be at all collectable was that the bankruptcy estate owed Slominski $25,000, which could be offset against any judgment.  Trustee hired Haslam on an hourly basis at a rate of $250.

Trustee's representations that he would do almost all of the work to bring the case to trial ended up not being true.  Haslam ended up doing most of that work.

3

Early in the representation, Haslam reviewed, at Trustee's request, videos of the subject property, detailed statements from LMS Restoration (the company that handled the cleanup and repair of the properties), and pleadings.

Haslam succeeded in getting trial set quickly for summer 2014. Slominski, who had been proceeding without a lawyer until this time, hired a lawyer who sought a continuance. The trial was continued, over Haslam's objection, to fall 2014.

Then, sometime before the fall 2014 trial date, Slominski, through his new counsel, sought discovery. Trustee completed this discovery, but Haslam reviewed it. Haslam also prepared and served Trustee's discovery, with Trustee's approval. This discovery went unanswered. Haslam prepared and filed a motion to compel with Trustee's approval. Haslam argued the motion as well.

During his investigation of the case, Haslam found out that a key witness who Trustee had intended to call would actually be detrimental to Trustee's case. Based on Haslam's discussion with the witness and recommendation to Trustee, Trustee decided not to call the witness.

Haslam identified another potential problem in Trustee's case. He learned that there was a week between the time Slominski vacated and Trustee took possession when no one lived on the property. Haslam pointed out that there was

4

potential for Slominski to argue that all the damage occurred during this week, while Trustee had legal possession of the property.

In addition to these unexpected problems in the litigation, Slominski again moved to continue the trial. Haslam appeared and objected to the continuance at Trustee's request. The trial was nevertheless continued to March 2015.

Sometime in December 2014, Trustee asked Haslam for "a good guess as to what I owe you up to now." In response, Haslam sent Trustee an interim bill for $6,850 based on 27.4 hours spent on the case. Trustee thought that this was too high. Trustee communicated this to Haslam and again reminded him to keep costs down. Trustee wrote a letter detailing the problems that Trustee had with the interim bill. Trustee did not, however, tell Haslam that he would be fired or replaced. Trustee also did not ask to change the billing arrangement.

Haslam later claimed that this interim bill was incomplete. Haslam testified that it did not include time for many emails that he had sent and received. Haslam asserts that this was the result of a software synchronization failure. Trustee claims that he relied on Haslam's interim bill as the maximum fees Haslam had in the case at that point. Trustee made plans for the remainder of the litigation based on Haslam's interim bill.

As the March trial date approached, Slominski's counsel moved to withdraw because he has not been paid.  Haslam objected to the motion to withdraw because withdrawal would probably lead to another continuance.  The Texas state court, however, granted the motion to withdraw.  The trial was continued yet again to June 2014.

As the June 2014 trial date approached, Haslam began lining up the witnesses Trustee intended to call.  One of the witnesses was a representative from LMS, the repair company, who was going to give a professional observation about the damage to the homes.  When Haslam talked to LMS, with Trustee's approval, the representatives were hostile and did not want to testify without being paid.  Haslam brought this to Trustee's attention.  Trustee believed they could pay LMS representatives as experts.  Haslam noted that the witnesses were not testifying as experts—they were talking about what they saw and did—and so under Texas law could not be paid.  Haslam found a new witness who could testify on these matters and prepared that witness.

Haslam prepared the trial witnesses and arguments.  At trial, Haslam questioned all of the witnesses and made all of the arguments.  Haslam, in short, was the lawyer who handled the case.

Haslam and Trustee emailed frequently during the case.  Haslam testified that these emails kept Trustee apprised of his work in the case and the status of the litigation.  Trustee repeatedly asked Haslam to keep him apprised of any developments in the case.

Although Trustee envisioned a quick and simple case in which Trustee himself would do most of the work, it turned out differently.  The case was plagued by delays and repeated continuances for reasons outside of Haslam's control.

## DISCUSSION

Early in the case, Trustee applied for and received approval from the Court to employ Haslam as a professional person under § 327(a).  The compensation of professionals employed under that Section is governed by § 330, which allows the Court to award reasonable compensation.  In re Agriprocessors, Inc., No. 08-02751, 2009 WL 2578950, at *1 (Bankr. N.D. Iowa Aug. 19, 2009).  Professionals employed by a bankruptcy trustee are entitled to compensation for "actual, necessary services rendered."  11 U.S.C. § 330(a)(1)(A) (2012).  Courts may, however, award less than the amount requested.  Id. § 330(a)(2).  When deciding the reasonable amount of compensation for services, courts look at all relevant factors, including:

(A) the time spent on such services;
(B) the rates charged for such services;

7

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).  Compensation cannot be given for services that were not "reasonable likely to benefit the debtor's estate."  Id. § 330(a)(4)(A)(ii)(I).

"The applicant bears the burden of proof on its claim for compensation. This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor."  In re Nat. Pork Prod. II, LLP, No. 12-02872-ALS11, 2013 WL 8351979, at *3 (Bankr. S.D. Iowa Mar. 12, 2013) (internal quotation marks and citations omitted).  To meet this burden of proof, any entity seeking compensation from the estate must file a detailed statement that sets forth "the services rendered, time expended, expenses incurred and amounts requested."  Fed. R. Bankr. P. 2016(a).  "This requires documentation describing the nature of the services in sufficient detail to permit the Court to determine that they are authorized, necessary and reasonable."  In re Agriprocessors, 2009 WL 2578950, at *2.

8

"The lodestar method, calculated as the number of hours reasonably expended multiplied by a reasonable hourly rate, is the appropriate calculation of fees." Stalnaker v. DLC, Ltd., 376 F.3d 819, 825 (8th Cir. 2004). In addition to reviewing Trustee's objections, the Court has an independent obligation to evaluate fees sought to be paid from the estate. In re Berg, 268 B.R. 250, 257 (Bankr. D. Mont. 2001).

Along with his application for compensation, Haslam submitted a time entry detail. It sets forth the work Haslam performed and the time he spent on that work in tenths of an hour. Haslam relies on this time entry detail in his application. Haslam seeks compensation for 69.10 hours at $250 an hour for a total fee award of $17,275.00.

## I.    Overall Value of Haslam's Services to the Estate

Trustee makes a global objection to Haslam's fee application on the basis that it is out of line with the value he provided to the estate. Trustee points out that the estate can probably only recover $25,000. Haslam asks for well over half of that amount in fees. Trustee also notes that he repeatedly directed Haslam to not spend too much time on the case. Trustee argues that Haslam's fees should properly be around $7,500. Trustee does not object to Haslam's hourly rate.

9

In response, Haslam argues that circumstances outside of his control, and even Trustee's control, prolonged the case. Haslam points to the substantial award he procured—about $44,000 plus attorney's fees of $10,000—as evidence of his effectiveness.

The Court finds that the limited collectability of the award is not a limit on Haslam's compensation in this case. Trustee hired Haslam on an hourly, not a contingent, basis. Trustee testified that he knew he would have to pay Haslam even if he had lost the case. If Trustee lost the case, there would have been no value to the estate. The Court will not impose what would amount to an after-the-fact contingency arrangement by pegging Haslam's compensation to the amount recovered. The Court will instead consider Haslam's knowledge of the limited collectability, and Trustee's repeated reminder to keep costs down, in determining reasonableness of time spent and hours billed.

## II.    Reasonableness, Necessity, and Authorization

The Code requires the Court to determine the reasonable number of billable hours for work that was authorized, necessary, and reasonably likely to benefit the estate. 11 U.S.C. § 330(a)(1), (4). Trustee argues that much of Haslam's work was unauthorized, unnecessary, or not reasonably likely to benefit the estate.

Trustee argues that Haslam was originally hired for the limited purpose of getting a trial date set and appearing at trial. Trustee argues that any work not

directly related to this goal was not necessary and so is not compensable. Trustee notes that he repeatedly directed Haslam to not spend too much time on the case. Trustee also argues that he did not authorize Haslam to object to opposing counsel's motion to withdraw. Trustee argues that Haslam's time spent objecting to this motion is not compensable because it was not authorized. Trustee also insinuated that he did not authorize Haslam to investigate witness issues or prepare discovery.

Haslam argues that Trustee instructed him to get a trial date set quickly. Haslam testified that he was authorized to object to the motion to withdraw based on this instruction. Haslam testified that the motion to withdraw was "functionally equivalent" to a motion to continue. Thus, he believed it pursued Trustee's objective to get a trial date set as quickly as possible. Haslam also performed other services that were outside of this original, narrow instruction—investigating and identifying witness issues, crafting and compelling discovery, and conducting the trial itself. Haslam argues that these actions are crucial to success in virtually all litigation. Haslam further notes that his role expanded during the case: Trustee relied on Haslam to do discovery, witness preparation, and effectively take over the litigation and trial. Haslam uncovered and resolved important witness issues. His investigation also uncovered facts that were inconsistent with Trustee's initial description of the case.

11

After careful review of the record, the Court finds that Haslam's services were authorized, necessary, and reasonably likely to benefit the estate. In particular, the Court finds that Haslam's objection to the motion to withdraw pursued Trustee's objective to get the trial set quickly. Moreover, Trustee functionally authorized Haslam to investigate and identify witness issues and prepare discovery. Trustee admitted he knew about these things and "didn't stop" Haslam from doing them. Trustee is an experienced attorney. He was in regular and frank communication with Haslam. The Court finds no evidence that Haslam performed work that Trustee told him not to. Haslam's work was reasonable trial preparation and was within the scope of any request to properly prepare a case. This is especially true given that Trustee effectively turned over the case and trial to Haslam.

Trustee's testimony that Haslam's work was unnecessary for success at trial is also entirely unpersuasive. Haslam identified issues that were central to Trustee's theory of the case and exercised the good judgment lawyers customarily provide their clients. Haslam identified and resolved unforeseen issues before trial that increased the likelihood of success at trial. Haslam identified that a witness Trustee planned to use at trial may have damaged the case. Haslam also confronted an expert's refusal to testify without being paid. Haslam found a substitute witness to cover the same issues. Without this substitute, Trustee may

12

have been without a witness to testify about the cost of the damage. The Court
rejects Trustee's argument that his admonitions to keep costs down made these
important steps unnecessary.

Again, Trustee's initial representations about how the litigation would go
ended up being inaccurate. No doubt Trustee intended to get to trial quickly and
cheaply and to do much of the work himself. But that is not what happened. The
other side's actions, and other circumstances, impeded quick resolution of the case.
Haslam addressed four continuances, a discovery dispute, and issues with two
witnesses. Moreover, he actually conducted the trial itself. This work was
important to winning at trial. Haslam's work was authorized, necessary, and
reasonable.

### III.    Other Specific Billing Issues

Just because Haslam's work was authorized, necessary, and reasonable,
however, does not necessarily mean that it is all properly compensable.
"[A]ttorneys are not entitled to compensation merely because time recorded was
actually expended. Billable hours do not necessarily translate into compensable
hours." In re Nat. Pork Prod. II, LLP, No. 12-02872-ALS11, 2013 WL 8351979,
at *6 (Bankr. S.D. Iowa Mar. 12, 2013) (internal quotation marks omitted).
"Whether the compensation sought is reasonable, given the time, nature, extent of
the services and the value of the services is always a question of fact for the court."

13

Chamberlain v. Kula (In re Kula), 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997)

(internal quotation marks omitted).  Trustee raised the following specific billing

issues: (a) whether Haslam can bill for work not accounted for in his interim bill;

(b) whether Haslam can bill for work rendered before the Court approved his

employment; (c) whether there were excessive minimum charges for emails; (d)

whether Haslam can bill for clerical work.

Before discussing each of Trustee's specific objections to Haslam's bill, the

Court notes that some of the time entries fall under multiple objections.  For

example, the very first entry in Haslam's application—0.3 hours for email billed

on March 18, 2014—is for work completed before the Court approved his

employment.  This entry was not included in his interim bill to Trustee.  Likewise,

the 0.5 hours billed to set up the file on March 29, 2014 was completed before the

Court approved his employment and is also clerical work.  As a result, the Court

will first make legal determinations about the categories of time entries that are not

compensable.  The Court will conclude with its lodestar calculation of the total

reasonable amount of compensation based on how the Court resolves specific

issues about some of the time entries.

### a.  Time Entries Not Included in Interim Bill

On December 1, 2014, Trustee asked Haslam for "a good guess as to what I

owe you up to now."  Haslam responded to this request on the same day with an

interim bill for $6,850 with accompanying time entry detail totaling 27.4 hours.

This accounting unintentionally left out some significant time that Haslam had

spent reading and writing emails.  This overlooked time was not included because

of a software synchronization failure.  Haslam added time entries for this

overlooked time on his final fee application.

Trustee objects to Haslam adding this overlooked time into his final bill.

Haslam responds that Trustee received many of these emails.  Haslam argues that

Trustee should have known that there was some technical failure when he did not

see those emails reflected on this interim bill.

The Court will not allow compensation for the overlooked time.  Haslam

knew that cost was a significant factor in the litigation and that Trustee was

weighing settlement options and assessing the cost of continued litigation.  Trustee

relied on the interim bill to make decisions on how to proceed and how much more

cost would be entailed.  Moreover, Trustee expressed concern over Haslam's

interim bill, even without the overlooked time.  Had it included all of the time

Haslam now claims, Trustee may have discontinued Haslam's employment.

The Court is not persuaded by Haslam's argument that Trustee is an

experienced attorney and should have realized that his bill was incomplete.

Trustee had no reason to expect that the interim bill did not include substantial

billable hours.  To the contrary, Trustee had every right to rely on Haslam's

interim bill.

### b.  Time Spent Before Court Approved Employment

Trustee objects to Haslam billing for work performed before the order

approving his employment.  Work performed before an order approving

employment is not compensable.  In re Racing Servs., Inc., No. 04-30236, 2008

WL 822231, at *6–7 (Bankr. D.N.D. Mar. 26, 2008); see also In re Mumm, No.

92-30001, 1994 WL 1887496, at *2 (Bankr. D.N.D. Mar. 4, 1994) ("[A]

professional will only be compensated for those services rendered and expenses

incurred **after** the entry of an appropriate order approving the employment in the

first instance.").

The Court approved the Application for Approval of Employment for

Haslam on April 22, 2014.  Any work performed before that date is not

compensable.  As a result, any entries for work performed before April 22, 2014

will be disallowed.

### c.  Minimum Charges for Emails

Haslam's time entry detail shows that the minimum charge for any time

spent on an email—reading or writing—or telephone call was initially 0.2 hours.

In fact, the interim accounting that Haslam sent to Trustee in December contained

no charges for 0.1 hours.  Later, after Trustee sent a letter to Haslam raising these

minimum charge as a problem, Haslam appears to have changed his billing

practice.  On the time entry detail that accompanies his application, for example,

the amount billed for some of the shortest emails has been reduced from 0.2 hours

(as shown on Exhibit Q, the sealed time entry detail exhibit presented at trial, and

on an accounting sent to Trustee in June, 2014) to 0.1 hours.

Although Haslam reduced the time entry for the shortest emails to 0.1 hours,

many emails and calls are still billed at 0.2 hours.  Trustee objects to this billing

practice because it leads to substantial time billed for reading and writing emails.

The Court notes that almost all of the minimum charge entries Trustee

complains about were overlooked time not included in Haslam's interim bill.  As a

result, the Court has already disallowed them in their entirety.  If the Court were to

consider these items on their merit, however, it would not categorically reduce

each entry.  After reviewing the entries that are not already disallowed overlooked

time, the Court finds that they are reasonable.

### d.  Attorney Fee Application and Clerical Work

Haslam billed at his $250 hourly rate for clerical work.  Trustee objects.

Trustee argues that clerical personnel should have performed this work.  Haslam

does not employ any clerical personnel and completed all clerical work himself.

Billing for clerical work at attorney's hourly rate amounts to excessive

payment and over-charging.  <u>Shives v. Colvin</u>, No. 2:14-CV-29 NAB, 2015 WL

4644295, at *3 (E.D. Mo. Aug. 4, 2015) ("Attorney's fees cannot be awarded for clerical tasks such as scanning and electronically filing pleadings."); In re Wheeler, 439 B.R. 107, 110 (Bankr. E.D. Mich. 2010) ("Clerical services should not be billed separately to clients, but should be included in the office overhead.").

Here, even though Haslam performed the clerical work himself, he is not entitled to payment for that work.  Clerical work is overhead and should not be billed at an attorney rate simply because Haslam chooses not to incur the cost of clerical help.  The Court will disallow or reduce compensation for the time entries for clerical or partially clerical tasks.

### IV.    Lodestar Calculation

The Court has found that Haslam's services were authorized, necessary, and reasonably likely to benefit the estate.  The Court also found, however, that some of the time entries are not compensable.  As a result, the Court will start with Haslam's time entry detail and disallow or reduce time entries according to the legal conclusions above.  "The lodestar method, calculated as the number of hours reasonably expended multiplied by a reasonable hourly rate, is the appropriate calculation of fees."  Stalnaker v. DLC, Ltd., 376 F.3d 819, 825 (8th Cir. 2004). The Court finds that the reasonable time for the work performed is 48.6 hours.  The Court also finds that Haslam's rate of $250 is reasonable.  Therefore, the reasonable amount of fees is $12,150.

18

The Appendix sets out the time entries that are disallowed or reduced. Each entry is followed by a parenthetical that summarizes why it is not properly compensable. Where the time entry is simply reduced, that is indicated.

## CONCLUSION

**WHEREFORE**, Haslam's Interim Application for Compensation is GRANTED IN PART. Haslam is awarded $12,150 in fees and $144 in costs.

Dated: March 31, 2016

THAD J. COLLINS
U.S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION

**APPENDIX**

The Court disallows 20.5 hours total.  The following entries are either reduced by the stated amount or disallowed entirely:

March 18, 2014 – 0.3 hours for email (not on December bill; before order approving employment)

March 23, 2014 – 0.1 hours for email (not on December bill; before order approving employment)

March 24, 2014 – 0.1 hours for email (not on December bill; before order approving employment)

March 27, 2014 – 0.1 hours for email (not on December bill; before order approving employment)

March 28, 2014 – 0.1 hours for email (not on December bill; before order approving employment)

March 29, 2014 – 0.5 hours to set up file (clerical work; before order approving employment)

April 3, 2014 – 0.1 hours for email (not on December bill; before order approving employment)

April 14, 2014 – 0.1 hours for email (not on December bill; before order approving employment)

20

April 17, 2014 – 0.1 hours for email (not on December bill; before order approving employment)

April 18, 2014 – 0.2 hours for email (not on December bill; before order approving employment)

April 21, 2014 – 0.2 hours for email (not on December bill; before order approving employment)

April 22, 2014 – 0.1 hours for email (not on December bill)

May 8, 2014 – 0.2 hours for email (not on December bill)

May 8, 2014 – 0.2 hours for email (not on December bill)

May 14, 2014 – 0.1 hours for email (not on December bill)

May 14, 2014 – 0.2 hours for email (not on December bill)

May 14, 2014 – 0.2 hours for email (not on December bill)

May 14, 2014 – 0.2 hours for email (not on December bill)

May 14, 2014 – 0.2 hours for email (not on December bill)

May 14, 2014 – 0.2 hours for email (not on December bill)

May 19, 2014 – 0.2 hours for email (not on December bill)

May 19, 2014 – 0.1 hours for email (not on December bill)

May 20, 2014 – entry for correspondence reduced by 0.2 hours (clerical work)

May 21, 2014 – 0.2 hours for email (not on December bill)

21

May 21, 2014 – 0.4 hours for email (not on December bill)

May 21, 2014 – 0.2 hours for email (not on December bill)

May 22, 2014 – 0.2 hours for email (not on December bill)

May 22, 2014 – 0.1 hours for email (not on December bill)

May 22, 2014 – 0.2 hours for email (not on December bill)

May 22, 2014 – 0.2 hours for email (not on December bill)

May 24, 2014 – 0.2 hours for email (not on December bill)

May 28, 2014 – 0.2 hours for email (not on December bill)

May 28, 2014 – 0.2 hours for email (not on December bill)

May 28, 2014 – 0.1 hours for email (not on December bill)

May 28, 2014 – 0.2 hours for email (not on December bill)

May 28, 2014 – 0.1 hours for email (not on December bill)

June 3, 2014 – 0.3 hours for email (not on December bill)

June 3, 2014 –entry for filing documents reduced by 0.5 hours (clerical

work)

June 11, 2014 – 0.2 hours for email (not on December bill)

June 18, 2014 – 0.1 hours for email (not on December bill)

June 25, 2014 – 0.2 hours for email (not on December bill)

June 25, 2014 – 0.2 hours for email (not on December bill)

June 27, 2014 – 0.2 hours for email (not on December bill)

July 4, 2014 – 0.2 hours for email (not on December bill)

July 4, 2014 – 0.2 hours for email (not on December bill)

July 8, 2014 – 0.2 hours for email (not on December bill)

July 20, 2014 – 0.2 hours for email (not on December bill)

July 23, 2014 – 0.1 hours for email (not on December bill)

July 23, 2014 – 0.2 hours for email (not on December bill)

July 23, 2014 – 0.2 hours for email (not on December bill)

July 23, 2014 – 0.1 hours for email (not on December bill)

July 23, 2014 – 0.1 hours for email (not on December bill)

July 23, 2014 – 0.2 hours for email (not on December bill)

July 23, 2014 – 0.2 hours for email (not on December bill)

July 23, 2014 – 0.2 hours for email (not on December bill)

July 23, 2014 – 0.2 hours for email (not on December bill)

July 23, 2014 – 0.2 hours for email (not on December bill)

July 24, 2014 – 0.1 hours for email (not on December bill)

July 24, 2014 – 0.1 hours for email (not on December bill)

July 24, 2014 – 0.1 hours for email (not on December bill)

July 24, 2014 – 0.1 hours for email (not on December bill)

July 28, 2014 – 0.1 hours for email (not on December bill)

July 28, 2014 – 0.2 hours for email (not on December bill)

July 29, 2014 – 0.1 hours for email (not on December bill)

July 29, 2014 – 0.1 hours for email (not on December bill)

July 29, 2014 – 0.1 hours for email (not on December bill)

July 29, 2014 – 0.2 hours for email (not on December bill)

July 30, 2014 – 0.1 hours for email (not on December bill)

July 30, 2014 – 0.1 hours for email (not on December bill)

July 30, 2014 – 0.1 hours for email (not on December bill)

July 30, 2014 – 0.1 hours for email (not on December bill)

August 1, 2014 – 0.1 hours for email (not on December bill)

August 1, 2014 – 0.1 hours for email (not on December bill)

August 1, 2014 – 0.1 hours for email (not on December bill)

August 1, 2014 – 0.1 hours for telephone call (not on December bill)

August 5, 2014 – 0.1 hours for email (not on December bill)

August 6, 2014 – 0.1 hours for email (not on December bill)

August 11, 2014 – 0.1 hours for email (not on December bill)

August 12, 2014 – 0.1 hours for email (not on December bill)

August 12, 2014 – 0.1 hours for email (not on December bill)

August 12, 2014 – 0.1 hours for email (not on December bill)

August 12, 2014 – 0.1 hours for email (not on December bill)

August 18, 2014 – 0.2 hours for email (not on December bill)

August 25, 2014 – 0.1 hours for email (not on December bill)

August 25, 2014 – 0.2 hours for email (not on December bill)

August 25, 2014 – 0.1 hours for email (not on December bill)

August 25, 2014 – 0.2 hours for telephone call (not on December bill)

August 26, 2014 – entry for drafting documents reduced by 0.2 hours

(clerical work; entry was 0.2 hours less on December bill)

August 27, 2014 – 0.5 hours for email (not on December bill)

August 27, 2014 – 0.2 hours for email (not on December bill)

September 18, 2014 – 0.1 hours for email (not on December bill)

September 14, 2014 – 0.1 hours for email (not on December bill)

September 23, 2014 – 0.1 hours for email (not on December bill)

September 23, 2014 – 0.1 hours for email (not on December bill)

September 24, 2014 – 0.1 hours for email (not on December bill)

September 23, 2014 – 0.2 hours for email (not on December bill)

September 23, 2014 – 0.2 hours for email (not on December bill)

September 24, 2014 – 0.1 hours for email (not on December bill)

September 24, 2014 – 0.1 hours for email (not on December bill)

September 26, 2014 – 0.1 hours for email (not on December bill)

September 26, 2014 – 0.1 hours for email (not on December bill)

September 26, 2014 – 0.4 hours for email and reviewing documents (not on December bill)

October 4, 2014 – 0.2 hours for email (not on December bill)

October 8, 2014 – 0.2 hours for email (not on December bill)

October 8, 2014 – 0.2 hours for email (not on December bill)

October 8, 2014 – entry for drafting documents reduced by 0.4 hours (clerical work)

October 15, 2014 – 0.1 hours for email (not on December bill)

October 15, 2014 – 0.2 hours for email (not on December bill)

October 21, 2014 – 0.1 hours for email (not on December bill)

October 21, 2014 – 0.2 hours for reviewing documents (clerical work)

November 12, 2014 – 0.1 hours for email (not on December bill)

November 14, 2014 – 0.1 hours for email (not on December bill)

November 14, 2014 – 0.2 hours for email (not on December bill)

November 17, 2014 – 0.1 hours for email (not on December bill)

November 17, 2014 – 0.1 hours for email (not on December bill)

November 17, 2014 – 0.1 hours for email (not on December bill)

November 17, 2014 – 0.1 hours for email (not on December bill)

November 17, 2014 – 0.1 hours for email (not on December bill)

November 17, 2014 – 0.1 hours for email (not on December bill)

November 17, 2014 – 0.1 hours for email (not on December bill)

November 17, 2014 – 0.1 hours for email (not on December bill)

November 17, 2014 – 0.1 hours for email (not on December bill)

November 19, 2014 – 0.1 hours for email (not on December bill)

November 19, 2014 – 0.1 hours for email (not on December bill)

November 19, 2014 – 0.1 hours for email (not on December bill)

November 26, 2014 – 0.1 hours for email (not on December bill)

November 30, 2014 – 0.2 hours for email (not on December bill)

November 30, 2014 – 0.1 hours for email (not on December bill)

November 30, 2014 – 0.1 hours for email (not on December bill)